LORAIN STEEL CO. v. PAIGE IRON WORKS et al.

(Circuit Court of Appeals, Seventh Circuit. April 13, 1909.)

No. 1,489.

PATENTS (§ 328*)—INVENTION—RAILWAY SWITCHES.

The Kress patent, No. 633,723, and the Krauss patent, No. 555,171, both for improvements in railway switches of the tongue type, used chiefly on street railroads, and each for means to prevent the kicking of the switch, are both void for lack of invention in view of the prior art.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Appellant failed in its suit to hold appellees for alleged infringement of patent No. 633,723, September 26, 1899, to Kress, and patent No. 555,171, February 25, 1896, to Krauss.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Kress's statement of invention and his claims in suit read as follows:

"My invention relates to railway-switches of that type in which there is a tongue or point having a depending pintle at its heel end by which the tongue is swiveled to the foundation structure.

"The object of my invention is to improve the durability and reliability of such switches by preventing a large part of the wear at the heel end of the tongue and thereby preventing any danger of 'kicking' of the tongue, which sometimes occurs when the parts at the heel end of the tongue have become loose. This sometimes shifts the tongue after the front wheels have passed onto the right track, so that the front and rear wheels may be switched to different tracks, derailment almost necessarily occurring. I attain the objects which I have just set forth by seating the heel end of the tongue in a recess, one wall of which takes the place of a cut-away portion of the tongue at its heel end; said wall being in alinement with the guard side of the tongue. I prefer also to have the opposite wall of the recess take the place of a cut-away portion of the tread side of the tongue at its heel end, although instead of doing this I sometimes gain the same general object by carrying the wheel across the heel end of the tongue by a flangeway formed in the floor of the fixed portion of the structure. I also prefer to provide a removable plate (which may be made of unusually hard material), which is secured to the switch structure and which has the recess and guard and tread portions herein referred to."

"1. In a railway-switch, the combination of a foundation structure, a plate having a recess and secured to said structure, a tongue having a depending pintle at its heel end and seated at said end in the said recess, and an opening through the floor of said plate for the pintle, substantially as described.

"2. In a railway-switch, the combination of a foundation structure, a plate having a recess and secured to said structure, a tongue having a depending pintle at its heel end and seated at said end in the said recess, an opening through the floor of said plate for the pintle, and a guard for one side of the heel end of the tongue formed by one wall of the recess, substantially as described.

"3. In a railway-switch, the combination of a tongue having a depending pintle at its heel end, a member having a recess in which the heel end of the tongue is seated, and a portion of one wall of said recess taking the place of a portion of the tread-surface of the tongue from the heel end of the tongue to a point in advance of the axial line of the pintle, substantially as described."

"5. The combination, in a railway-switch, of a foundation structure, a plate secured therein and having a recess, a pivoted switch-tongue seated at its heel end in said recess, the walls of said recess taking the place of cutaway portions of the sides of the tongue, substantially as described.

"6. The combination, in a railway-switch, of a foundation structure having a recess, a plate removably secured in said recess, and itself having a recess, and a switch-tongue seated in said last-mentioned recess at its heel end and having a depending pintle passing through the floor of said plate, substantially as described."

The object of Krauss was to provide a means for holding a switch-tongue down in place. The claims here involved are the following:

"1. In a railway-switch, a tongue-fastening comprising a bolt extending vertically downward from the tongue, and a spring in the frame of the switch and adapted to exert a downward force upon the bolt.

"2. In a railway-switch, a tongue-fastening comprising a bolt passing through the tongue and removably secured therein, said bolt passing downward into a pocket in the switchframe, and a spring encircling said bolt, and adapted to exert a downward force thereupon.

"3. In a railway-switch having a vertically pivoted tongue, a pocket in the frame of the switch and beneath the tongue, a spring in said pocket, and a bolt depending from the tongue and engaging the spring."

For opinion below, see 158 Fed. 636.

C. P. Byrnes, for appellant.
George P. Fisher, Jr., for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). The Kress device relates to what is known as the tongue switch, a kind that is particularly adapted for use in street car tracks on paved streets. By means of "a depending pintle at its heel end the tongue is swiveled to the foundation structure." If the tongue is of such a form that the flange of the front wheel of a car in passing from point to heel can strike or press against the side of the heel, back of the pintle, the point will probably be thrown so that the rear wheel will take a different course; but it was not Kress who first conceived the idea of so shaping the tongue that it could not be struck back of the fulcrum. Patent No. 586,892, July 20, 1897, to Angerer, and the manufacturing practice of the appellees, were earlier disclosures of how to shape the tongue and seat it in the foundation structure so as to prevent "kicking." If the whole switch structure were of metal unaffectible by wear, the Angerer form would continue indefinitely to be a preventive of kicking or accidental displacements; but the modern heavy street cars, particularly at switches and crossings, hammer and wear the original steel or cast structures out of shape, and a loose and wobbly switch structure is a source of danger. So Kress proposed to cut out a part of the foundation and insert "a removable plate of unusually hard material" which should serve as the floor on which the switch-tongue should rest, and through which the depending pintle should extend, and which should also serve as the side walls about the heel of the tongue. Kress did not invent the hard material, nor the art in street railway construction of cutting away the usual material and inserting removable plates of hard material wherever there was unusual or excessive wear. Hard-metal inserts had been applied quite generally to frogs and crossings, and also to switches. Patents Nos. 536,734 and 536,735, April 2, 1895, to Moxham; patent No. 555,772, March 3, 1896, to Howe & Angerer; patent No. 534,972, February 26, 1895, to Samuel; switch structures manufactured by the New York Switch & Crossing Company in 1898. Removable hard-metal plates had been used as the floor on which the switch-tongue should bear and in which the pintle should be seated; but no one prior to Kress had made the Angerer side walls about the heel of hard-metal. Kress's predecessors, however, had not only taught the art of making and setting particular removable plates, but they also had shown that, wherever an injurious change of shape was likely to occur by reason of wear, there was a place to be treated by the insert process, and that the hard-metal plate or block should be of the form of the metal displaced. In view of the prior art we are of opinion that the Kress patent is void for want of invention.

Turning to the Krauss patent, we find that the bolt and spring are in front of the pintle. In appellees' structure the holding-down spring is upon the pintle. Considering the claims as read upon appellees' structure, we hold them to be void for want of invention, in view of

patent No. 364,267, June 7, 1887, to Lewis, for a pivoted crossing-rail held down by a bolt with a spring-washer, and of the very general use of spring-washers upon bolts to maintain a yielding contact.

The decree is affirmed.